# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPERIOR COURT OF JUDICATURE.

————◆————

### STRAFFORD, SEPTEMBER TERM, 1816.

══

### MOSES TOMSON *versus* GEORGE C. WARD.

An unrecorded deed of lands voluntarily given up, and cancelled by the parties to it, with intent to re-vest the estate in the grantor, as between them and as to all subsequent claimants under them operates as a re-conveyance, and re-vests the estate in the grantor.

THIS was a writ of entry, and was tried here at the last term upon the general issue, when it appeared in evidence, and from the admission of the parties, that James Osgood being seized of the demanded premises in fee on the 11th day of May, 1803, by his deed, duly executed and acknowledged, conveyed them to one Levi Sanborn, who paid him a part of the consideration, and gave a promissory note for the remainder. Sanborn immediately entered and built a dwelling house upon the land. In November, A. D. 1803, Sanborn's house, together with his unrecorded deed, were consumed by fire. Sanborn and Osgood afterwards agreed that the deed should be considered as cancelled, and the title to the land as re-vested in Osgood, and that Osgood should give Sanborn a bond conditioned to convey the land to the latter, upon the payment of that part of the consideration which then remained due—and such bond was accordingly given. On the 22d of January, A. D. 1810, Sanborn

was indebted to Tomson, and it was agreed between them, that Tomson should pay Osgood the debt due from Sanborn to him ; that Sanborn should procure Osgood to give Tomson a deed of the premises ; that Sanborn should also give him a quitclaim deed of them ; and that Tomson should give Sanborn a bond, conditioned to convey to him, upon the payment of the debt due to Tomson, including the sum he was to pay Osgood.

This agreement was carried into execution by the parties. The deeds from Osgood and Sanborn to Tomson were acknowledged on the 22d of January, A. D. 1810, the day of their date, but were not recorded until the 13th of January, A. D. 1814. When these deeds were made, Tomson knew all the circumstances respecting the former deed from Osgood to Sanborn. Prior to the 22d of January, A. D. 1810, Sanborn was indebted to A. Lovejoy upon a promissory note, which Lovejoy endorsed to C. Hutchins, who, on the same day, sued out a writ against Sanborn, returnable to the court of common pleas in Hillsborough county, and caused the premises to be attached, and at the March term following recovered judgment, and sued out a writ of execution, which was duly extended on the premises within thirty days from the time of the rendition of judgment.

At the time of the conveyance from Osgood and Sanborn to Tomson, neither Osgood nor Tomson had any knowledge that Sanborn was indebted to Lovejoy or Hutchins ; nor had Lovejoy or Hutchins any knowledge of the deeds to Tomson. The defendant is in possession under C. Hutchins.

A verdict was taken, by consent of the parties, for the demandant, subject to the opinion of the court upon the question whether the evidence was in point of law sufficient to sustain the verdict ; and if the court should be of opinion that it was sufficient, the defendant was to have liberty to move the court in chancery to render judgment on the verdict, as upon a mortgage ; otherwise the verdict to be set aside, and a verdict entered for the defendant.

BELL, J.* The case affords no evidence of fraud in relation to the claims of either party. They are, therefore, to be considered as equally innocent purchasers. The attachment of Hutchins was prior to the recording of the deed to Tomson, and consequently vested in Hutchins whatever title Sanborn had at the time of the attachment. The question therefore to be decided is, whether Sanborn was the owner of the premises at the time of the attachment.

The agreement between Sanborn and Osgood, after the loss of Sanborn's deed, that the title of the land should revest in Osgood, to be conveyed to Sanborn upon the payment of a debt, presents the question in the same point of view as if the deed had been actually cancelled by the parties, with the intention that the title should thereby be revested in Osgood.

Does the act of cancelling an unrecorded deed, by agreement of the parties, with intent thereby to revest the title in the grantor at a time when no other persons have acquired rights in the land under the conveyance to the grantee, operate as a re-conveyance of the title by the laws of New-Hampshire?

A deed of lands, duly executed and delivered, though it be not recorded, vests the title in the grantee as against the grantor and his heirs, and all subsequent claimants under the grantor, having prior notice of such deed. By the statute of February 10th, A. D. 1791, entitled "An act declaring the mode of conveyance by deed," sect. 1, it is enacted, that no title to real estate greater than an estate at will, shall be passed but by some instrument in writing.

If this, therefore, were a new question, and the language of the statute of 1791 were to receive what appears to be its most natural construction, the act of cancelling an unrecorded deed could not amount to a re-conveyance. This is not, however, a new question. The statute of February, A. D. 1791, is, as it respects this question, substantially a copy of a statute of the province of New-Hampshire, passed A. D.

RICHARDSON, C. J., having been of counsel, did not sit in the cause.

Tomson
*vs.*
Ward.

(1) 5 Geo. i., c.
100, § I.

1719 ; (1) and long before the Revolution the courts of law of the province had given a construction to the words of that statute in relation to the question under consideration. They had decided, that, as between the parties to the unrecorded deed, the fee did not so pass, but that a cancelling of the deed by agreement of the parties destroyed what they seem to have considered an inchoate title in the grantee, leaving the grantor in possession of his former title.

That this was the settled construction of the statute before the Revolution, is as satisfactorily ascertained as any question of this nature can be. Tradition, as well as the recollection of the oldest members of the profession of the law in this state, agree that such was the ancient and uniform construction of the statute.

It is an established legal maxim, that when the legislature adopt or re-enact a statute, the previous construction of the statute, as settled by the courts of law, is adopted ; and the same construction has accordingly been uniformly put by our courts upon the statute of 1791.

Many titles to real estate depend on the construction now given to this statute, and it would be of great public inconvenience to unsettle this question.

Whatever might have been the opinion of the court, if this question were now for the first time to be decided on the words of the statute of 1791, without a reference to the former established construction of the statute, (2) they believe that they are justified, on sound principles of law and public policy, in adhering to what they believe has been the uniform construction of this law in this state for nearly a century past.

(2) 2 John. 84,
Jackson vs.
Chase.   6 Mass.
Rep. 24, Marshall vs. Fisk.
10 Mass. Rep.
403, Comm. vs.
Dudley.

The opinion of the court is, that the evidence is in law sufficient to sustain the verdict ; and that, according to the agreement of the parties, the tenants have leave to move for judgment on the verdict, as upon a mortgage.

*J. P. Hale*, for the demandant.

*S. Moody*, for the tenant.