## NOAH FARRAR *versus* ISAAC FARRAR.

The cancelling of a deed does not revest property which has once passed under it by transmutation of possession.

But where a grantee has voluntarily and without any misapprehension or mistake consented to the destruction of the deed with a view to revest the title, he cannot be permitted to show by parol evidence the contents of the deed so destroyed, and in this way the destruction of a deed may have the effect of a reconveyance.

A mere agreement to cancel a deed without actually cancelling it cannot however have this effect.

COVENANT broken. The plaintiff alleged, that the defendant by deed dated 18th November, 1822, conveyed to him, the plaintiff, a tract of land, and covenanted that he, the defendant, at the time of making the deed, was seized in fee, when in fact he was not so seized, but by his deed dated May 31, 1811, had conveyed an undivided half of the land to John Pierce. The defendant alleged in his plea that at the time of making said deed on which the plaintiff declares he was siezed, upon which issue was joined.

The cause was tried here at May term, 1827, when it appeared in evidence, that the defendant, on the 31st May, 1811, being seized of the land, conveyed the undivided half of the same to John Pierce, who on the same day reconveyed it to the defendant in fee and mortgage to secure the payment of two notes amounting to $540. The defendant continued in possession of the land a great part of the time until he conveyed the land to the plaintiff, but it did not distinctly appear that he was in possession actually at that time.

The plaintiff then showed that John Pierce died in 1821, and that the notes mentioned in the mortgage and the mortgage itself were found among Pierce's papers, the notes being cancelled, and that the mortgage had been obtained from Pierce's widow and put on record in 1826.

Farrar
*v.*
Farrar.

Pierce's widow testified that in 1815 her husband told her that he had given back the land to the defendant and had lost nearly all he had paid, and that he had taken up the notes he gave for the land.

David Carpenter testified that he was present when Isaac Farrar sold the said undivided half of the land to Pierce, and that afterwards in the year 1814, the said Isaac leased the other half to Pierce for one year; that after the lease expired said Pierce told said Isaac that he, Pierce, could not pay the purchase money, and wished to have the bargain given up, and they verbally agreed that the said bargain should be given up. Afterwards the witness saw said Pierce in Boston, and Pierce then said the writings had been exchanged, but there was a mistake in the exchange and that the deed of said Isaac to said Pierce by mistake was not given up. Immediately after the agreement aforesaid the said Isaac took possession of the whole farm and continued in possession until the year 1821 or 1822.

There being no dispute with respect to the facts stated by the witnesses the court directed a verdict to be taken for the defendant, subject to the opinion of the court upon the foregoing case.

*Wilson, jr.* and *J. Parker* for the defendant.

The action cannot be sustained,

1st, Because the defendant was seized in fact, at the time of the conveyance to the plaintiff. The testimony did not show, positively, that defendant was in possession up to the precise time when the deed was executed, but the witness stated him to have been in possession about that time, and that when he moved away plaintiff immediately took possession, and has ever since retained it. It was therefore to be inferred. But it is immaterial which held it when the deed passed, as plaintiff cannot allege his own seizin as a breach of this covenant. 17 Johns. Rep. 166, *Fitch* v. *Borden* ; 2 N. H. Rep. 460, *Watts* v. *Wellman.*

2d, The defendant had legal seizin of the premises. The mortgage from Pierce has never been discharged. Under certain circumstances, for the advancement of justice, the giving up and cancelling of a deed may revest the title. 10 Mass. Rep. 407, *Commonwealth* v. *Dudley*; 1 Greenl. 78, *Barrett* v. *Thorndike*; 1 N. H. Rep. 9, *Tomson* v. *Ward*.

Other authorities, however, hold that the legal title to land, transferred by a deed not recorded, cannot revest in the grantor, by the surrender and cancellation, or destruction of such deed. 4 Conn. Rep. 550, *Botsford* v. *Morehouse*; 5 ditto 262, *Gilbert* v. *Buckley*; 6 Mass. Rep. 24, *Marshall* v. *Fisk*; 2 Johns. Rep. 84, *Jackson* v. *Chase*; 2 H. Black. Rep. 264, *Bolton* v. *Bishop of Carlisle*; 2 Lev. Rep. 113, *Nelthorpe* v. *Dorrington*. And it is believed, that even in this state, the principle that cancellation revests the title, would not be sanctioned in a case where it would work ultimate injustice.

But in the case at bar the mortgage was never cancelled, and the deed to Pierce not having been redelivered, or his title reconveyed to the defendant, on which event alone the mortgage was to be destroyed, Pierce had no authority to cancel it; but the defendant had a right at any time to reclaim it from Pierce. Had he reclaimed it in Pierce's life time, it would have been available to him from its first delivery, and Pierce's death cannot change the defendant's rights. He has since reclaimed and received it—put it on record, and still possesses it. Had it remained in possession of Pierce, or been destroyed, it would have subsisted as a security for the debt. Where a deed cannot be produced, the substance of it may be proved. 10 East 60, *Hendy* v. *Stephenson*. The mere destruction of a deed does not impair the title. 10 Coke's Rep. 92; 3 D. & E. 151; 1 Greenl. 78. "God forbid" says Eyre Ch. J. "that a man should lose his estate, by losing his title deeds." 2 H. Black. 263.

The cancelling of the notes by Peirce does not affect the case. The debt still existed. No consideration passed for its discharge, and the destruction of the notes, which were merely evidences of the debt, does not discharge either the debt or the mortgage. 2 N. H. Rep. 527, *Elliot* v. *Sleeper*; 13 Johns. Rep. 555, *Dunham* v. *Day*; 9 Mass. Rep. 242, *Davis* v. *Maynard*.

*Upham* and *Newton*, for plaintiff.

RICHARDSON, C. J. delivered the opinion of the court.

It is well settled, that the cancelling of a deed does not revest property which has once passed under it by transmutation of possession. *Jackson* v. *Chase*, 2 Johns. 84; *Marshal* v. *Fisk*, 6 Mass. Rep. 24; 4 Barnewell and A. 672; *Doe* v. *Bingham*; 3 D. & E. 156; 2 H. Black. 263; 1 Ventris 296, *Woodward* v. *Aston*; 6 East 86, *Roe* v. *The Archbishop of York*; 2 Levintz 113, *Nelthorpe* v. *Dorrington*; Shep. Touch. 69—70.

And in all cases a mere agreement to cancel a deed without actually cancelling it is without effect. Thus Shepherd in his Touchstone, 70, says "if an obligee deliver up an obligation to be cancelled and the obligor do not afterwards cancel it, but the obligee happen to get it again into his hands and sue the obligor upon it, the obligor hath not any plea to avoid it, for the deed remains still in force."

So in *Dana* v. *Newhall*, 13 Mass. Rep. 498, it was held that an agreement to cancel a deed, by which real estate had passed, did not revest the estate.

In *Cross* v. *Powell*, Cro. Eliz. 483, it was held that "if a deed be delivered to be cancelled to the party himself, yet if it be not cancelled and the other gets it again, it remains a good deed."

There are however cases in which an actual cancelling of a deed by which land has passed, will in effect revest the estate. Thus where A being seized and possessed of land purchased by him of B, by a deed duly executed but not recorded, contracted to sell the land to C, and for that purpose cancelled B's deed, who at A's request made a

Farrar
*v.*
Farrar.

new conveyance to C, it was holden that C's title was valid, notwithstanding A continued in the occupation of the land jointly with C after the last conveyance. 10 Mass. Rep. 403, *Commonwealth* v. *Dudley*.

So in *Tomson* v. *Ward*, 1 N. H. Rep. 9, it was held that an unrecorded deed of land, voluntarily given up and cancelled by the parties to it with intent to revest the estate in the grantor as between them and as to all subsequent claimants under them, operates as a reconveyance and revests the estate in the grantor.

It is apprehended that in these cases the cancelling of the deed operates like a reconveyance but that it is not in fact to be considered as such. The true ground on which these decisions are to be supported is that the grantee having voluntarily and without any misapprehension or mistake consented to the destruction of the deed with a view to revest the title, neither he nor any other person claiming by a title subsequently derived from him is to be permitted to show the contents of the deed so destroyed by parol evidence. So that in fact there being no competent evidence that the land ever passed, the title is to be considered as having always remained in the grantor.

Such being the law, the case now before us is easily settled. The deed from the defendant to Pierce not having been actually cancelled, remains in full force. The same is true of the mortgage from Pierce to the defendant. The notes given by Pierce for the land and secured by the mortgage having been given up and cancelled under a misapprehension that the title to the land was revested absolutely in the defendant, they still remain due. It is then very clear that the defendant was seized of the land at the time he conveyed to the plaintiff.

The right of Pierce's heirs to redeem may be an incumbrance, for which the plaintiff may have a remedy, if his deed contains a proper covenant for the purpose, whenever he shall have extinguished that right. But in this action we are of opinion that there must be

*Judgment on the verdict.*