# BARRETT & a. *vs.* BARRON.

A mere agreement to cancel a deed, without an actual cancelling, will not render it void.

The owner of land conveyed it to the plaintiffs, and at the same time granted to the defendant a right to build a dam across a certain river, in consideration that he would give a bond to the plaintiffs and their assigns, conditioned to indemnify them from all injury caused by the dam.    The deed to the plaintiffs was afterwards surrendered by agreement of the parties, and the bond was delivered to the grantor, who testified that " the whole trade was cancelled by agreement of the parties."    The grantor then conveyed the land to a third person, and delivered the bond to the grantee, that he might have the benefit of it ;—*Held,* that these facts did not prove an agreement to cancel the bond.

To an action of debt on a bond, the condition of which is in the alternative, *non damnificatus* is not a good plea.

Barrett *v.* Barron.

The condition of a bond was that the defendant should repair all damages done to a certain farm by a certain dam, and should pay to the plaintiffs and their assigns all damages that the farm might sustain in consequence of the dam ;—*Held*, that the matters specified were alternative, and not cumulative, and that to a suit upon the bond, *non damnificatus* was not a good plea.

If a bond, conditioned for the payment to the owners of a farm, and their assigns, of all damages caused to the farm by a certain dam, be delivered by the holder to a subsequent owner of the farm, for his benefit, he will have an equitable interest which a court of law will protect, and an action may be maintained upon the bond for his benefit, in the name of the obligees.

DEBT ON BOND, dated on the 13th day of December, 1832.

The defendant craved oyer of the condition, which was to pay all damages that the plaintiffs might sustain in consequence of the dam built across the Ammonoosuck river by the defendant, and to repair all damages done by the water to the farm bought by the plaintiffs of Guy Young, caused by the erection of the dam, and to pay the plaintiffs or their assigns all damages that said farm ˌmight thereafter sustain in consequence of the dam. He then pleaded *non est factum,* and under it offered in evidence the deposition of Guy Young to prove the cancelling of the bond, subject to the opinion of the court upon its competency. Young deposed that on the 15th day of December, 1832, he conveyed to the defendant the privilege of building a dam across the river, in consideration that he would make a bond to the plaintiffs, who had then bought the farm, and their assigns, the condition of which was in substance to pay all damages caused to the farm by the dam, and which was the bond now in suit. The deed to the plaintiffs not having been recorded, about two years afterwards was given up to him by the grantees, and he gave up to them the notes which they had given for it, "and the whole trade was cancelled by agreement of the parties." The bond was also given to him at the same time. He afterwards sold the farm, and delivered the bond to the grantee, that he might have the benefit of it.

The defendant also pleaded that the plaintiffs ought not to maintain their action, because neither they, nor any person having their estate in the farm aforesaid, had ever been damnified by reason of the dam.

Replication, *precludi non*, &c., because on the 27th day of January, 1839, the waters of the river, by reason of the dam, were thrown back, pent up, and then turned and thrown upon the farm, and washed away three-fourths of an acre of the soil, and undermined the dwelling house, &c., &c.

Demurrer, because the replication does not show that the plaintiffs, or either of them, at the time of the alleged damage had any interest in the farm.

*Livermore*, for the defendants. The first question is upon the demurrer to the replication. This manifestly is no answer to the plea, which is that the plaintiffs have not been damnified. For *haud constat*, that the washing away of the soil is a damage to *them*, because the property may at the time have been another's.

If the replication had concluded with a "*per quod;*" or, " and so the plaintiffs have suffered damage," &c., it would, perhaps, have answered the plea. And such are the forms of replication to a plea of *non damnificatus.* 3 *Mod.* 252 ; *Cro. Jac.* 363, 634; *Archb. Pl.* 237 ; *Richards* vs. *Hodges*, 2 *Saund.* 83 ; *Haynes* vs. *Bryant, Ib. in notis ; Hulland* vs. *Malken*, 2 *Wils.* 126.

The reason of this seems to be, to let into the rejoinder a reiteration of the matter of the plea, together with such further matter, consistent with and corroborating it, as may show that the new matter in the replication is no avoidance of the plea. As in the case at bar; we might, if the replication had so concluded, have rejoined, admitting that the waters washed the land, as alleged in the replication, yet denying that the plaintiffs had been damnified, because they had long before departed with all their interest in the land. 11 *East* 88, *Fisher* vs. *Pimbley.*

The replication, then, confesses that the plaintiffs have not been damnified. For whatever is not denied in pleading, is confessed, provided it be material and traversable ; 19 *Johns.* 95 ; and, as we have endeavored to prove, the replication alleges no new matter shown to be an avoidance.

Barrett *v.* Barron.

This brings into question the sufficiency of the plea. And it must be treated as if generally demurred to. The plea sets out the bond and condition on oyer, and says that the plaintiffs have not been damnified by reason of any thing mentioned in the condition thereof.

The legal effect of this condition is, to indemnify the plaintiffs by repairing the damage which might be done them by the dam, or by making pecuniary satisfaction to them or their legal representatives.

Or else, it is to repair the damage, or pay such damage as they or others holding the land, either by a paramount or derivative title, might sustain by reason of the dam, &c.

The former we hold to be the true construction of the bond in the first place. And secondly, if such were not the whole meaning of the parties, the law will give effect to nothing which, upon a stricter interpretation of the instrument, they may appear to have intended beyond that.

The word " and," by which the three clauses in the instrument are coupled, is alternative, and not cumulative. It could not have been intended to bind the defendant to pay *and* to repair all damages. And it would be a confusion of ideas to suppose him bound not only to pay all damages the obligees might sustain, but to pay and repair all damages the farm might sustain. But it would be too extravagant for thought to suppose that he bound himself at all events to repair the possible devastations which might happen to a farm by one of the largest and most impetuous mountain streams, which every year leaves traces of vast and irreparable damage upon its banks.

It is an illiberal, as it is an illegal reading, which seeks to give effect to each separate clause in an instrument, unmindful of that surer indication of the parties' meaning which may be drawn from a broad survey of the whole. And a kindred rule of law allows a controlling effect to those clauses which denote the general design, over those which describe rather its methods and details. *Platt on Cov.* 138.

The subject matter to which the obligation relates is such, that it may be supposed to have been in the contemplation of the parties that to repair might not be utterly impossible, and to reserve to the defendant that option, in the place of the pecuniary recompense which was first named, and mainly relied upon.

It is quite obvious, therefore, as well from the circumstances of the parties and the subject matter of the contract, as according to fair rules of construction, from the instrument itself, that its object was indemnity. And all the minor and subordinate parts of the instrument should be construed with reference to that object. And, of course, the various matters mentioned in the condition being so many modes or means of indemnity, are merely alternative. And the condition, with its various forms of expression, amounts to no more than this ; that the defendant shall repair the damages, or make recompense to the plaintiffs or their legal representatives.

No damage having been done them, there is no forfeiture.

This inference is confirmed by other legal principles. The condition of a bond is for the benefit of the obligor, and is to be construed in his favor, as is a deed poll in favor of him who takes it. And, agreeably to this rule, whenever the condition contains several things in the alternative, the obligor may choose which he will perform ; and if one become impossible, by the act of Providence, or of the obligee, the whole will be discharged. It is the same, even in covenants. *Com. Dig., Condition,* (*K,* 2) ; *Cro. El.* 398, *Eaton* vs. *Laughter.* The bond, therefore, is not forfeited, till a case arises which gives him the benefit of that option. The plaintiffs have sustained no damage.

Should it seem, however, that the intention of the parties is not fully disclosed by that construction of their instrument, for which we contend ; and that the real nature of the stipulation was that the defendant should pay to the *plaintiffs* the recompense, whosesoever should be the loss, it was a mere wager, and not lawful in this state. 6 *N. H. R.* 104,

*Hoit* vs. *Hodge.* Or it was in the nature of an insurance, which requires for its validity that the assured have an interest at the time of the loss. 8 *Mass. R.* 515 ; *Com. Dig. Merc.* (*E*, 9.)

The law will confine the remedy to the injury, and will not give such construction to this contract as will devolve upon the plaintiffs either the power or the duty to vindicate another's rights.

The plea of *non damnificatus* is good. 2 *Saund.* 83, *in notis ;* 3 *Mod.* 252 ; *Cro. Jac.* 363, 634 ; *Archb. Pl.* 237 ; 5 *T. R.* 309.

So much for the first question, which was upon the demurrer. The second arises upon the deposition of Guy Young, as applied to the general issue. It proves, we say, the cancellation of the bond. See *auth. cited in Farrar* vs. *Farrar,* 4 *N. H. R.* 191 ; *Stewart* vs. *Riggs,* 9 *Greenl. R.* 51. The only sensible inference which can be drawn from them, is, that the intention of the parties is to decide whether the act amounts to a cancellation or not. If a wrongful destruction of a deed is no cancellation, so when a party wrongfully procures again a deed which has been given up to be cancelled, he ought not to maintain a suit upon it.

*Morrison,* (with whom was *Goodall,*) for the plaintiffs. Our positions are as follow : 1. Either the averment in the plea that no person having the plaintiff's interest in the farm has been damnified, is immaterial, as the defendant seems to treat it in argument ; or else, the plea is double. In either case the replication is, in substance, an answer to it.

If the defendant supposed that the plaintiffs had no interest in the farm at the time of the breach, and intended to rely upon that fact as a defence, he should have pleaded it, and tried the question.

The bond shows that they had such an interest at its date ; and if the fact be important, the presumption will be that the interest existed at the time of the breach, until the contrary is averred and proved.

The plea of *non damnificatus* did not put in issue the plaintiff's title to, or interest in the farm. It could only oblige them to assign a breach in their replication. 2 *Caines' R.* 320. The breach assigned was that on the 27th day of January, 1839, the waters of the river were thrown back upon the farm by reason of the dam, and injured it. The demurrer admits that the damage was done to the farm, as stated, and yet the defendant asks judgment because it does not appear that those having the plaintiffs' interest were injured. When the bond was given, the plaintiffs had the interest which every owner has in his property. How, then, could the farm have been injured without an injury to those who had the plaintiffs' interest? Who but the owner can be damaged by an injury to his property? An averment, then, of injury to the farm, is substantially an averment of injury to the owner; and the matter of the replication is sufficient to answer the plea; and if the plea is defective at all, it is so only in form. *Gould on Pl., part* 1, *ch.* 9, § 18; and the demurrer in this case can reach no other defect in form than that shown as cause of demurrer. *Ibid.* § 19.

The counsel admits that if the replication had concluded with a *per quod ;* or, " and so the plaintiffs have suffered damage," it might have answered the plea ; and says, " such are the forms"—thus virtually admitting that the defect is only in the form of the conclusion.

A bare conclusion, generally, is only form. *Com. Dig.,. Pleader,* (*F,* 5 ;) therefore, not praying damages shall be aided on general demurrer. *Ibid.* And the omission of it would not now be deemed bad upon special demurrer. In the prayer of judgment, every thing is included, and upon that prayer the court will give the plaintiff such damages as he may be entitled to receive. *Archb. Civ. Pl.* 267, *and cases there cited.* The defendant's argument is, that the replication should have concluded with a *per quod,* or, " and so the plaintiffs have suffered damage." But he did not point out this defect in his demurrer, his first intimation of it having been in his argument.

" It is not necessary, in an action for the penalty of a bond, to declare that the plaintiff has sustained damage by reason of the defendant's refusal to pay ; nor to allege, after the assignment of breaches, that the plaintiff has been injured by such breach." *Allison* vs. *Farmer's Bank,* 6 *Rand.* 234. We say, on the whole, that the replication is not defective, even in form.

2. This plea is bad in substance. This plea is applicable to an action on no bond, except one to save harmless and *indemnify.* If the condition is single, and is simply to indemnify, the plea is good ; but if the condition is multifarious, or in the alternative, the plea is not good. *U. S. Digest,* *Bond,* 685, 686 ; 2 *Ch. Pl.* 485, *note a.* In such cases the plea should be performance. But if *non damnificatus* be pleaded instead of performance, the plea will be bad on general demurrer. *Andrus* vs. *Waring,* 20 *Johns.* 153 ; *McClure* vs. *Erwin,* 3 *Cowen* 313. If either of the conditions is in the alternative, not only must the defendant plead performance, but he must state which he has performed, or the plea will be bad on general demurrer ; for otherwise the court cannot know which is performed. *Com. Dig.,* *Pleader,* (*E,* 25 ;) 1 *Greenl.* 190, *Bailey* vs. *Rogers.* Applying, then, these principles to the case at bar, is the bond one of indemnity, or is it something more ? Is it with one condition, or more than one ? The defendant says that the second clause of the condition is in the alternative. If so, the plea is obviously insufficient, upon the authorities. Upon his own construction, the condition is not single. His difficulty is not lessened by considering either of the clauses to be in the alternative. However it may be with the second, the *and,* which connects the first and second clauses with the last, is conjunctive, and the last clause is cumulative.

It appears to have been the intention of the parties to the bond, by the first part of the condition to make provision for any injury that might be more immediately done to the farm by reason of the dam. They might well suppose that

when the dam should be built it would naturally throw back the waters, and that they, when accumulated, might break away the dam, and rush upon the farm, and that greater or less injury would be done the land by the first freshet. Perhaps they also intended by the second clause, that if the injury thus done could be repaired, the defendant should be at liberty to do it, instead of paying pecuniary damages. If this is the fair construction of the second clause, it is, of course, alternative.

But they knew that it might become necessary or convenient for the owners of the farm to convey it. The dam would be an incumbrance, and would prevent the sale, unless the purchaser also could be protected. We therefore find that the last clause makes a further provision, and clearly and explicitly requires the obligor to pay to the obligees and their assigns all damages which the farm may hereafter sustain in consequence of the dam. This clause is not to indemnify the obligees, but to pay to them and their assigns, in order that the bond might pass with the farm to the purchaser. Then the condition, instead of being single, is multifarious ; and, as the defendant says, one of the clauses is in the alternative. Here the plea is bad, as before stated.

Again : though the bond should be assigned and go with the farm, it could give only an equitable interest. An action upon it at common law must be in the name of the obligees. 6 *Mass. R.* 239 ; 9 *Mass. R.* 101. But if they had sold the farm, and assigned the bond upon a good consideration, they would not be damnified by any injury caused by the dam. Hence, if the plea of *non damnificatus* should be allowed, the purchaser would be without remedy, though as much entitled to the benefit of the bond as to the farm itself.

A recovery, therefore, should be had upon the bond for the benefit of the person who is entitled to receive it.

But it is said, that even if it were the intention of the parties that the bond should be something more than an indemnity, the law will not suffer the intention to be carried into effect.

It is not perceived on what grounds the plaintiffs' construction is thought to be either illiberal or illegal. It surely was not very illiberal that the obligees, when giving a right to build a dam upon their farm, should require the person to whom the right was given, to engage to pay all the damages caused by the dam to that farm. Nor is the illegality of such an agreement apparent. It is not *contra bonos mores*, nor more than justice would require. It does not fall within the class of illegal wagers; 6 *N. H. Rep.* 104; for the parties had an interest in the farm, at least when the bond was given, as appears by the bond itself. And if there is anything in the form of policies of insurance which will prevent any one who has no interest at the time of the loss from recovering for those who have, it does not apply to this case. But even the assignee of a policy of insurance has an interest which the law will protect. 5 *Mass.* 558. A bond, like other choses in action, may be assigned, so as to give an equitable interest, and a right to sue in the name of the obligee to enforce and protect it. And where the assignment is upon a good consideration, it gives a right to use the name of the obligee for that purpose, not only without his assent, but against his dissent. 8 *Mass.* 465; 13 *Mass.* 304; 6 *Pick.* 322.

Even if the replication be informal and insufficient, we submit if the judgment should not be against the defendant, because his plea is bad, and so he has committed the first fault. 1 *Ch. Pl.* 647.

3. Do the facts disclosed by Guy Young's deposition show a cancelling of the bond ? He was not a party to the bond, nor was the defendant a party to the arrangement by which the deed and the bond were given to the defendant. It does not appear that the defendant had anything to do with this arrangement, or that he knew anything about it. Nor does it appear for what purpose the bond was given to the witness. There is nothing to show even an intention of the parties, (one of whom knew nothing of the transaction) to

cancel the bond. And if there had been such an intention, it would have had no effect, as it was not actually cancelled. *Farrar* vs. *Farrar*, 4 *N. H. Rep.* 191 ; and *Cross* vs. *Powell, Cro. Eliz.* 483, *there cited.*

GILCHRIST, J.* The defendant alleges that the bond on which this suit is brought has been cancelled by the agreement of the parties. If this be so, the action must fail, and an enquiry into the other points raised by the case will be unnecessary.

It appears from the case, that after Young had conveyed the farm to the plaintiffs, he granted to the defendant the right to build the dam. It is not shown that the grant was made upon any other consideration than the execution of the bond now in suit; and Young, therefore, could have had no other interest in requiring the bond, than to protect either the plaintiffs' interest in the farm, or the title into whosesoever hands it might come. It is but a reasonable presumption that a sensible man would look, with sufficient care before him, to see beyond the plaintiffs' interest, and regard the title, whoever might hold it. He might, himself, again own the property ; in which event, if the interest of the plaintiffs alone had been cared for, he would be subjected to all the damages against which he desired to secure them, and would lose the benefit of a security no more valuable to them than to himself. He would have permitted the defendant to erect a dam which might be the cause of serious injury to his property, not only without any corresponding benefit, but without any provision for the damages he might sustain. We have no right to suppose that he was so destitute of reasonable vigilance as to regard only the interest of these individual plaintiffs.

If these views be correct, they will throw some light upon the transaction which, in the year 1834, or about two years after the date of the deed, took place between Young and the plaintiffs, in relation to the instruments in question.

* WOODS, J., having been of counsel, did not sit.

Young says that the deed to the plaintiffs not having been recorded, was given up to him by the grantees, and he gave up to them the notes they had given for the land ; "and the whole trade was cancelled by agreement of the parties." We can easily understand that they might have had sufficient reasons for desiring that their notes should be cancelled, and that Young might have assented thereto ; but what object could either the plaintiffs or Young have had in wishing to cancel the bond ? To the plaintiffs it would be indifferent what became of it. Their interest having ceased with the rescission of the deed, the fate of the bond, which was intended only to protect an interest in the land, would be immaterial to them. They would not ask that it should be cancelled. And if Young entertained those views of his interest which we have supposed, he would be very far from desiring to cancel it.

There being, then, if our reasoning be sound, no assignable object which either Young or the plaintiffs could have had in view in desiring that the bond should be cancelled, we come to the enquiry, what was actually done by the parties ? Young says that the deed and notes were given up, "and the whole trade was cancelled by agreement of the parties." Now this sentence must be construed with reference to the subject matter which would interest the parties ; that is, the deed and the notes. By the word "trade," distorting it from its proper meaning, that of traffic in merchandize, the witness meant the bargain which he had made with the plaintiffs. When he said that the *trade* was cancelled, he meant only that the deed and the notes were surrendered by each to the other, with the intent thereby to revest the title to the land in the witness. It is only by considering what the parties desired to accomplish, that any intelligent exposition can be given of the sentence ; for the word "trade," when used to express ideas which it does not properly convey, may, without considering the object of the parties, comprehend the bond as well as the other instruments. The

subsequent conduct, also, of Young, shows that he did not understand the bond was to be cancelled, or that it was to be given to him, in order to become of no effect; or to be obliterated or defaced in any way; in which figurative sense the word "cancel" is now often used. 2 *Bl. Com., ch.* 20. He delivered the bond to the person to whom he subsequently conveyed the land, with the intent, as he expressly says, "that he might have the benefit of it."

For the foregoing reasons we think that the parties never intended to cancel the bond. And even if such had been their intention, it has been settled in this court that a mere agreement to cancel a deed will be of no effect without an actual cancelling. *Farrar* vs. *Farrar,* 4 *N. H. Rep.* 191; *Morse* vs. *Child,* 6 *N. H. Rep.* 521. And the authorities referred to by the court, in *Farrar* vs. *Farrar,* seem to hold that although the instrument be actually surrendered, for the purpose of being cancelled, still, if it be not cancelled, and the other party get it again, it will still remain a valid deed. *Shep. Touch.* 70; *Cross* vs. *Powell, Cro. Eliz.* 483.

This point must be adjudged in favor of the plaintiff.

We come now to the consideration of the questions raised by the demurrer to the replication. And here the first enquiry is, whether the defendant's plea be sufficient, in compliance with the rule that upon demurrer judgment must be against him who has committed the first fault in pleading.

The condition of the bond is, that the defendant, 1, shall pay all damages that the plaintiffs may sustain in consequence of the dam being built; 2, and shall repair all damages done by the water to the farm, that may be caused in consequence of the dam being erected; 3, and shall pay to the plaintiffs and their assigns all damages that the farm may hereafter sustain in consequence of the dam being erected.

The first and third of these clauses differ from each other very slightly, even in language, and seem to express substantially the same idea. If any injury should be caused by the dam, the plaintiffs were to receive a compensation therefor

in money. And it is not easy to see that the sense of the words would have been changed, if they had provided that the plaintiffs should be indemnified from the injury caused by the dam. But the second clause is different. It provides that the defendant shall *repair* all damages caused by the dam. Although it is connected with the preceding clause by the word " and," it is not, therefore, to be considered cumulative, and as imposing on the defendant the duty, not only of paying, but of repairing the damages. It is one of those cases where "and" must be construed to mean "or"; for if the farm should be injured by the dam, and the defendant should repair the damages, it certainly could not be contended that, after having done this, he should pay money as compensation for them. Considering the first and third clauses to have the same meaning, our construction of the whole condition is that it binds the defendant either to pay or to repair the damages, and that the second clause is in the alternative.

The plea of *non damnificatus* is in the nature of a plea of performance. In the general form it applies to cases where the condition is general, to indemnify or discharge the plaintiffs from any damage by reason of a certain thing, as in the ordinary case of a bastardy bond. 1 *Chitty's Pl.* 569 ; 1 *Saund.* 117, *n.* 1 ; *Steph. on Pl.* 364. It may be used where the defendant means to allege that the plaintiff has been kept harmless, and indemnified according to the tenor of the condition ; and may then be pleaded in general terms, without showing the particular manner of the indemnification. 2 *Saund.* 84. If the condition do not use the words " indemnify," or " save harmless," or some equivalent term, but stipulate for the performance of some specific act, intended to be by way of indemnity, such as the payment of a sum of money by the defendant to a third person, in exoneration of the plaintiff's liability to pay the same sum, this plea will be improper, and the defendant should plead performance specially, as " that he paid the said sum." 1 *Bos. & P.* 638, *Holmes*

vs. *Rhodes.* If the condition be to " discharge" or " acquit" the plaintiff from a particular thing, this plea will not apply, but the defendant must plead performance specially, " that he discharged and acquitted," and must also show the manner of the acquittal. 1 *Saund.* 117, *n.* 1, *Cutler* vs. *Southern;* *Strange* 681, *White* vs. *Cleaver;* 2 *Ld. Raym.* 1449. But if the condition be to " discharge and acquit the plaintiff from any *damage*" by reason of a certain thing, *non damnificatus* may then be pleaded, because that is, in truth, the same thing with a condition " to indemnify and save harmless." 1 *Saund.* 117, *n.* 1 ; 1 *B. & P.* 648, *n.* (*b.*) It is upon this latter ground that we think the first and third clauses in this condition mean in substance nothing more than a stipulation to indemnify the plaintiffs from any injury caused by the dam.

But these clauses are in the alternative ; the defendant was to do one thing or the other. And where the matters are in the disjunctive or alternative form, a general allegation of performance is insufficient, and he should show which of the alternative acts was performed. *Steph. on Pl.* 369 ; *Com. Dig., Pleader,* (*E,* 25 ;) 2 *Saund.* 410 ; *Cro. Eliz.* 433. The reason given for this is, that the general plea of performance, in the case of negative matters, would be indirect or argumentative, and where the acts are alternative would be equivocal. We are, therefore, of opinion that the plea is no answer to the action, and upon this ground, without further enquiry, we might render judgment for the plaintiffs.

As, however, upon a different state of the pleadings, it might become necessary to give a construction to the condition, for the purpose of bringing this controversy to a close, we have made an examination of that question in the present case.

The ground of the demurrer to the replication is that it does not show that the plaintiffs had any interest in the land at the time the damage was done.

Before ascertaining the meaning of the condition, it may be well to enquire what result would have followed if the re-

plication had contained the words, "and thereby the plaintiffs have been injured," so that it would have been free from the defendant's objection ; or, if it had contained some more specific averment that the plaintiffs owned the land at the time of the injury.

If the defendant had traversed this allegation, the plaintiffs might, in the first place, have demurred to it. And upon the demurrer, the question would have been, whether, admitting that the *plaintiffs* had sustained no injury, the action could be maintained. This would instantly have brought up the general question of the proper construction of the bond. Nothing would have been settled by it, and it would clearly have been an immaterial traverse. It would have led to no decisive result. It would not have comprehended the whole matter in controversy, which would be, whether the plaintiffs might not still have maintained the action ; and that could be determined only upon an examination of the condition.

In the second place, the plaintiffs might have taken issue upon the traverse, and might have tried the question of fact. And the result would have been immaterial. What is the substance, the *gravamen*, of the replication ? Is it that one of the events had occurred, upon the happening of which the defendant had agreed to make compensation ; or, is it merely that the *plaintiffs* have suffered injury ? If the river were thrown back, pent up, and then turned and thrown upon the farm, and the dwelling-house were undermined, and the land injured, does it not follow that the allegation, " and thereby the plaintiffs have suffered damage," is an inference from the substance of the replication, and not that substance itself ? Or, can we say that although the farm might have been damaged, the interest of the owner of the farm was not injured ? An injury to property is an injury to the owner of it. The traverse would have been a traverse of an inference from the replication, and not of the matters alleged in it ; a denial, not that the farm had suffered damage, but that the owner of it had. And if the verdict had been that the

plaintiffs had no interest in the farm, the question of the construction of the bond would still remain to be determined, and upon that the rights of the parties must depend.

The question, then, is, what effect may legally be given to the bond? There is no doubt, from the facts which appear in the case, that the parties intended it should accompany and protect the title to the land, whoever should hold it. After providing, in the two first clauses, for paying for, or repairing the damages, the third clause binds the defendant to pay to the plaintiffs, or their assigns, the damages caused by the dam. There was no reason for inserting this clause unless the interest of some other person than the plaintiffs had been considered. Moreover, as the dam might cause permanent injury to the land, and as the plaintiffs might desire at some future time to convey it, in order that an advantageous sale might be effected it would be necessary that the owner of the farm should be protected against loss.

If the bond had been assigned to a stranger to the title, and he had brought a suit upon it, he would have been entitled to judgment. The enquiry would then have been made, whether he had sustained any damages; and, having suffered none, he would have been entitled only to nominal damages. He would have had no equitable interest to be protected. But in this case, the holder of the bond is the owner of the land, and has been injured. He has an equitable claim to compensation. His case, then, comes within the principle that the equitable interest of the assignee of a chose in action will be protected in a court of law. 2 *Bl. Rep.* 1137, *Stuart* vs. *Tucker;* 1 *B. & P.* 447, *Legh* vs. *Legh.* We can see no objection to giving him the compensation he ought to receive through the instrumentality of the plaintiffs, who will hold whatever sum they may recover as his trustees, and for his benefit. The object of all the parties is thus effected; the defendant pays only what he has stipulated to pay, and the injured party obtains compensation. We are, therefore, of opinion that there should be

*Judgment for the plaintiffs.*