## Mussey & a. v. Holt & a.

If the grantee deliver back an unrecorded deed to the grantor, with the intention of re-vesting the title in him, it will have that effect.

If one of several lessors assign his interest in the land to another of the lessors, an action for the rent reserved on the lease may be maintained by those of the lessors who have the interest in the land, without joining as plaintiff the lessor who has assigned, and without attornment by the tenant.

One tenant in common cannot, without authority from his fellows, make a lease that will bind them.

One partner cannot make a lease of land that will bind the other partners, unless where the lease is made in prosecution of the partnership business, and where the making of it is in the exercise of an authority necessarily implied from the nature and object of the partnership.

Where the defendants entered into land under a lease from one who had no authority to make it, and the plaintiffs being owners of the land, afterwards, and while the defendants were in possession, gave notice that they would not recognize the lease, and that if the defendants remained in they would claim rent of them; and the defendants remained without objection, and afterwards negotiated with the plaintiff for the settlement of the rent—*held*, that this was evidence upon which the jury might find that the defendants held under the plaintiffs, and were liable to pay them rent.

Assumpsit, for the use and occupation of the saw mill, shingle mill, clapboard mill, and the farm and buildings in Littleton ·called the Gile· farm and mill, for one year, ending December 15th, 1847. Also on a *quantum meruit* for the use and occupation of the same property from December 15th, 1846, to the commencement of the suit January 31st, 1848.

The plaintiffs were John Mussey, Greely Hanaford, George Hanaford, Joseph Stevens, John Stevens, William Stevens, and Henry S. Walker; and the defendants, Daniel Holt, Jr., Abiel Demming, and James H. Johnson.

Plea, the general issue and notice of set-off.

Ebenezer Stevens, a witness for the plaintiffs, testified that on the 15th of December, 1846, he was in the actual occupation of this property; that the owners were the plaintiffs, and he then claimed to be one of the owners, and about that time he surrendered and gave up possession to the defendants; that he communicated the names of the owners, including his own name, to

the defendants, and that he held possession for himself and as agent for the other owners; that he claimed to be an owner by virtue of a deed which was informally executed, and which, soon after the lease hereafter mentioned was made, he enclosed in a blank paper and returned to William Stevens, from whom he received it; that he was recognized as an owner by some of the others, and that he did not know that his rightful ownership was denied by any of them; that he understood the owners to be a firm, including himself, under the style of "Stevens, Walker & Co.;" that he was the agent of those persons in their partnership capacity, and so represented himself to the defendants. That he delivered the possession of the property to the defendants by a written lease, which was produced, and was put in evidence by the defendants without objection.

This lease purported to be made by Stevens, Walker & Co., a partnership, to Holt, Demming & Johnson, dated December 15th, 1846, conveying the property described in the declaration, for two years, at a stipulated rent, and with various agreements; was not under seal, and was signed—

"Stevens, Walker & Co.,
Holt, Demming & Co."

On the 29th of January, 1847, the plaintiffs gave a written notice to the defendants, signed with the plaintiffs' individual names, in which they stated that they were owners in common of six eighths part of the premises; that each of them respectively would insist upon the payment of the rents, issues and profits as should be received by the defendants, or such reasonable rent as the property was worth while it remained, or any of it, in the defendants' hands, and until the plaintiffs should put an end to the defendants' occupation, which the plaintiffs inserted in the notice, as they had a right to do, and protested that Ebenezer Stevens had no right to make the lease, or any other disposition of the property, not having the authority of the plaintiffs so to do.

The defendants occupied the premises from December 15th, 1846, to January 31st, 1848.

The plaintiffs offered to shew that I. Rand was the attorney and agent of the plaintiffs, and represented them in the negotiations which took place for the adjustment of their claim on the defendants for rent.

They also offered in evidence a paper signed by the defendants, which was dated August 15th, 1848, which contained the following statements and propositions:

"We propose to pay to William Stevens and others, former owners of the Bethlehem mills, rent for said mills from December 14th, 1846, to March 24th, 1848, at the rate of nine hundred dollars per year; also to pay to said Stevens and others for timber cut on the premises in January, 1847, at the several rates named in our contract, dated December 15th, 1846."

"All claims for damages upon any contract between us and Stevens and others, to be waived, and all said contracts to be cancelled."

Also a paper signed by J. H. Johnson, in behalf of the defendants, dated August 23d, 1848, addressed to J. Rand, stating an account between the defendants and Stevens, Walker & Co., and proposing certain terms for adjustment of the plaintiffs' claim for rent.

The defendants objected to this evidence, because it went to prove offers of compromise; and the court rejected the evidence, as having no tendency to prove that the defendants were tenants of the plaintiffs, and because, as offers of compromise, they were inadmissible.

The defendants moved for a nonsuit:

1. Because of the nonjoinder of Ebenezer Stevens, who was jointly interested with the plaintiffs in the claim which is the subject of the suit.

2. Because the suit is in the names of the plaintiffs in their character as individuals, when it should have been in the names of the plaintiffs and Ebenezer Stevens, in their partnership capacity under the firm of Stevens, Walker & Co.

3. Because upon the facts shewn, the action of assumpsit can not be maintained for the use and occupation of the premises in

question, that use and occupation appearing to be adverse to the plaintiffs.

The court ruled that the action for use and occupation lies only upon a contract express or implied. That here appeared to have been an express contract with the plaintiffs and Ebenezer Stevens, in their capacity of partners, which the plaintiffs disavow, and deny that there was any tenancy under it; that no other contract could be implied—that expressed precluding any implied contract. That there was then no contract between the parties; and the action was not sustained.

The plaintiffs then contended they were entitled to recover against the defendants as co-tenants, if they held under a valid lease as against Ebenezer Stevens. But the court held that under the statute they could recover against the defendants as co-tenants only on a special declaration. The plaintiffs then moved to amend so as to bring the case within the statute, but the court held the amendment not admissible, and directed a nonsuit, which the plaintiffs moved to set aside.

*Livermore,* for the plaintiffs.

*Hibbard, & H. A. & W. J. Bellows,* for the defendants.

PERLEY, J. The testimony of Ebenezer Stevens was competent to shew that he and the plaintiffs were owners of the land, December 14th, 1846. He was then in possession, claiming for himself and them.

If the lease made by Stevens to the defendants on the 14th of December, 1846, is to be regarded as binding on the plaintiffs, the defendants, entering under the lease, became possessed of a term for two years, as tenants to the plaintiffs and Ebenezer Stevens. Ebenezer Stevens derived his claim to the land from William Stevens; the deed from William to Ebenezer Stevens is not in the case; but it is stated that it was informally executed, and it was returned to the grantor soon after the lease. There is nothing in the case from which it can be inferred that

it was recorded. We must, therefore, understand that it was an unregistered deed.

Ebenezer Stevens returned the deed to William Stevens, from whom he received it, and since that time does not appear to have made any claim under it. From this evidence it would have been competent for the jury to infer that the deed was returned for the purpose of re-vesting the title in William Stevens. Such would be a natural inference from the fact of returning the deed, and the conduct of the parties in regard to the title agrees with that supposition.

If the deed had been cancelled with the intention of re-vesting the title in the grantor, it would have had that effect by way of estoppel. The grantee having put it out of his power to produce the deed, the law will not allow him to introduce secondary evidence in violation of his undertaking, and to defeat the fair intention of the parties. *Tomson* v. *Ward*, 1 N. H. Rep. 9; *Farrar* v. *Farrar*, 4 N. H. Rep. 191.

Delivering the deed back into the hands of the grantor, with the intention of re-vesting the title, will have the same effect on the same principle. This puts it in the power of the grantor to cancel or destroy the deed, or what is in effect the same thing, to detain it from the grantee. In neither case can the grantee produce the deed, and the law will estop him in both cases to give secondary evidence to defeat the intended operation of his act in returning or annulling the deed. An agreement to cancel, or an agreement to return, is not sufficient; it is no better than an agreement to convey, and leaves the deed in the hands of the grantee, so that the principle of estoppel cannot be applied.

In this case, returning the deed operated, if such were the intention, as a conveyance to William Stevens of all the right that Ebenezer Stevens had under the deed, which was all the right that he had in the land, and would transfer his share in the lease and rent to William Stevens, one of the plaintiffs, as incident to the reversion. Shepherd's Touchstone 70.

The lease to the defendants, taking it to be valid and binding on the plaintiffs, is not to be regarded as a mere personal

contract. It was a demise for a term of years, and conveyed an estate in the land. The rent reserved on the demise, issued out of the land, and passed with it by a conveyance of the land, as incident to the reversion.

At the common law, on the feudal idea of a personal relation between landlord and tenant that could not be dissolved without mutual consent, an assignee of the lessor was not allowed to maintain an action for rent against the tenant without an attornment. By statute 32 Hen. VIII., chap. 34, the tenant was made liable to pay his rent to the assignee of the reversion without attornment. It was held, however, that this statute applied only to demises by deed. But the statute 4 Anne, chap. 16, § 9, gives to the assignee an action for use and occupation, in case of a demise without deed, though there has been no attornment of the tenant. *Lumley* v. *Hodgdon*, 16 East 99; *Standen* v. *Christmas*, 10 Ad. & E. (N. S.,) 139; *Peck* v. *Northross*, 17 Conn. Rep. 217.

The provisions of these statutes have been adopted in this State. *Pendergast* v. *Young*, 1 Foster's Rep. 234.

The facts in *Standen* v. *Christmas* were much like those of the present case. Standen and one Richardson were tenants in common, and on the 18th of March, 1844, Richardson, without the knowledge of the plaintiff, leased the premises to the defendant, Christmas, by writing, not under seal, for one year. In the first half of the year Richardson sold his interest in the premises to the plaintiff. The action was assumpsit, for use and occupation, and the court held that in point of law, under statute 11, Geo. II., chap. 19, § 14, which has been adopted in this State, the occupation was by permission of the plaintiff. *Alton* v. *Pickering*, 9 N. H. Rep. 496.

We are of opinion that the case shews evidence competent for the jury to find that the share of Ebenezer Stevens in the premises was assigned during the term to William Stevens, one of the plaintiffs; that in such case the plaintiffs might recover the rent due under the lease without attornment, in this form of action, and that on this point the ruling of the court was incorrect.

If Ebenezer Stevens had any interest in the land, he was tenant in common with the plaintiffs, and without authority from them could only lease his own individual share. 2 Cruise Dig. 495 ; 4 Cruise Dig. ·84.

There may be cases where a partner would have power, as such, to make a lease of land binding on the other partners ; if so, it must be where the lease is made in the prosecution of the partnership business, and where the making of the lease was in the exercise of an authority necessarily implied from the nature and object of the partnership. But nothing appears here from which it can be inferred that this was such a lease. Story on Partnership, § 94 ; *Coles* v. *Coles*, 15 Johns. 161.

The plaintiffs, therefore, as to their individual shares in the premises, were not bound by this lease made by one of the tenants in common, and if the defendants entered and claimed under it, they could not discharge themselves from the plaintiffs by paying the rent reserved. But the defendants could not be held to account with the plaintiffs as tenants in common in this form of action, and the notice to amend the declaration, in order to bring the statement of the plaintiffs' case within the statute, was properly rejected.

On the motion for a nonsuit, the court ruled that there was " an express contract with the plaintiffs and Ebenezer Stevens, in their capacity of partners, which the present plaintiffs disavow, and deny that there was any tenancy under it. No other contract can be implied ; that expressed precludes any implied contract. There is then no contract between the parties, and the action cannot be maintained."

This ruling decided, as matter of law in the case, that there was a special contract with Stevens and the plaintiffs; that the defendants held under that contract; that the plaintiffs could not recover under it, because Ebenezer Stevens did not join in the suit; that no other contract could be implied; that if the defendants did not hold under that contract, their holding was adverse to the plaintiffs, and this action could not be maintained.

Under this ruling, so far as it may be material to the case, it must be taken for the fact, that the lease as to the plaintiffs was inoperative, and that they had the right which they claimed in their written notice to the defendants of January 29, 1847.  It is undoubtedly correct that if there was an express contract in writing *with the plaintiffs*, under which the defendants entered and held, no other contract with them could be implied.  But if the contract made in the name and behalf of the plaintiffs was unauthorized by them, it was no contract of theirs, and they could be no way affected by it, unless they recognized and ratified it.  If, after the defendants entered under the written contract made with Stevens, they discovered that it was made without authority from the plaintiffs, they might admit the right which the plaintiffs claimed, and make a new contract with them, express or implied.  If, after the notice which the defendants received, they had said to the plaintiffs: We acknowledge the right which you claim, and shall set up no claim under the lease, they would hold under the plaintiffs by leave and license from them, and would be bound by an implied contract to pay a reasonable rent.  If Stevens had no right to lease, the defendants were not obliged to wait till they were evicted by virtue of judgment.  They might yield to a paramount title without suit, and the lessee, who thus yields to paramount title without suit, is discharged from the rent reserved on his lease.  *Loomis* v. *Bedell*, 11 N. H. Rep. 74; *Fitchburg Cotton Man. Co.* v. *Melvin*, 15 Mass. 268.  Was there, then, evidence in the case from which the jury might have inferred an implied contract or understanding that the defendants were to hold under the plaintiffs; or, in the language of the declaration, that the defendants occupied by the permission of the plaintiffs?

On the 29th of January, 1847, the plaintiffs, signing their names as individuals, gave the defendants a written notice, denying the right of Stevens to make the lease or any other disposition of the premises, insisting on their right to turn the defendants out forthwith, and also giving notice that they should

insist upon the payment of such rent, issues and profits as should be received by the defendants, or such reasonable rent as the property was worth while it remained in their hands. The substance of the notice is, that the plaintiffs claim the right to turn the defendants out immediately, but consent that the defendants may remain in until further notice, provided they will admit the plaintiffs' right, and hold under them. After this notice the defendants continued in possession, making no objection to the claim of the plaintiffs. This was competent evidence, tending to shew that the defendants consented to hold under the plaintiffs. If the defendants had been sued in trespass, on the ground that their occupation was adverse and tortious, this proposition and offer of the plaintiffs, and the continued occupation of the defendants, without objection to the plaintiffs' claim of title, would have been evidence that the defendants held by license and permission of the plaintiffs; and must be so in this case. The conduct of the parties is quite consistent with this view of the case. The plaintiffs after this made no attempt to disturb the occupation of the defendants; the defendants remained in without objection, and E. Stevens has made no claim under the lease. *Foss* v. *Hill*, 8 Shepley 539. The plaintiffs offered to prove that one Rand acted as their agent in the subsequent negotiations with the defendants for the settlement of their claim. It must therefore stand as if the plaintiffs had themselves called on the defendants to settle with them for the rent, and the defendants had entered into negotiations with the plaintiffs, not including Stevens, to settle the account, agreeing to settle with the plaintiffs on certain terms and conditions. After notice from the plaintiffs that E. Stevens had no right, and that they would not recognize the lease, the defendants could hardly say they did not understand that they were negotiating with the plaintiffs, exclusive of Stevens; at least it would have been quite competent for a jury to find this on the evidence reported in the case. If the plaintiffs were the proper parties to settle with; if they were the proper parties to demand and receive the rent without suit, they were certainly the proper parties to

recover it by a suit. If E. Stevens ought to join in the suit, there was equal reason for his joining in the negotiations for a settlement.

The offer of particular terms of settlement, made in the course of the negotiation, was not evidence that the defendants were liable to that extent. But the fact that the defendants negotiated with the plaintiffs as the parties entitled to demand and receive the rent, is in the nature of an acknowledgment, to use the language of the court in *Turner* v. *The Railway*, 20 Law J. Rep. (N. S.) Ex. 91; 2 Law and Equity Reps. 342 : That the defendants "held the land on the terms of paying for it." In that case it is said, " when they were called on for compensation, there was a negotiation between the plaintiff and the defendants for the payment of the compensation of the whole. That is evidence to go to the jury that the defendants held the land upon the terms that they were to pay for it. But it was no more than evidence to go to the jury, and if my brother Williams had left the question to the jury, there would have been no ground to disturb the verdict, for there certainly was evidence to go to the jury."

In this case the evidence was not conclusive against the defendants, for, though they may have held the land as trespassers and wrong-doers, adversely to the plaintiffs, yet they might negotiate with them for a settlement, though there had been no previous undertaking to hold under the plaintiffs. The evidence was, however, competent as tending to shew that they so held, and we think the question should have been submitted to the jury, as was held in *Turner* v. *The Railway*.

It is at least doubtful whether any action at law can be maintained by partners, as such, for the rent of land. They can have no legal seizin of land in their partnership capacity ; and the rent issues out of the land as incident to the reversion. After E. Stevens relinquished his claim, the premises and the rent, *under the lease,* belonged to the plaintiffs, and not to the firm of Stevens, Walker & Co. The plaintiffs did not constitute the firm of Stevens, Walker & Co., and they could not sue in

that capacity. If the plaintiffs can recover aside from the lease, there is no ground to maintain that their action should have been in the name of Stevens, Walker & Co.

*The verdict must be set aside.*